In re OUTLET DEPARTMENT STORES,
INC., d/b/a the Edward Malley
Company, Debtor.

Miriam TEITELBAUM, Trustee,

v.

CHOQUETTE & CO., INC., Defendant.

Bankruptcy No. 82 B 10153 (TLB).
Adv. No. 85–5120A.

United States Bankruptcy Court,
S.D. New York.

Feb. 19, 1988.

Edward & Angell, New York City, by
Thomas E. Pitts, Jr., for Choquette & Co.,
Inc.

Jules Teitelbaum, P.C., New York City,
by Gary Ginsburg, for Trustee of Outlet
Dept. Stores, Inc.

## DECISION ON MOTION TO DISMISS

TINA L. BROZMAN, Bankruptcy
Judge.

Contesting both subject matter and personal jurisdiction, Choquette & Company, Inc. (Choquette), the defendant, seeks dismissal of this adversary proceeding for the recovery of a preference.

### FACTS

Outlet Department Stores, Inc. (the Debtor) operated department stores in Rhode Island, Massachusetts and Connecticut. It purchased merchandise from Choquette from time to time. During July through September, 1981 Choquette made seven shipments to the Debtor's warehouse in Rhode Island. The Debtor paid for these shipments by checks drawn in Sep-

tember and October, 1981. As a result, Choquette is not a creditor of this estate.

Choquette is a Rhode Island corporation which is a distributor of consumer products and electronic equipment. It conducts business in several New England states, but not New York. Choquette contends that it is not qualified to do business as a foreign corporation in New York and that its only connection with New York is an isolated sale of a color television in November 1984 and occasional accommodation sales.

On January 25, 1982 the Debtor filed a petition in this court under chapter 11 of the Bankruptcy Code (the Code). The case was converted to chapter 7 on January 31, 1983, and a trustee (Trustee) was appointed. On February 11, 1985 the Trustee commenced this adversary proceeding as provided in Fed.R.Bankr.P. 7004(b)(3) and (d) by mailing a summons and complaint to Choquette in Rhode Island. The complaint alleges that the payment received by Choquette in December 1981 was a preferential transfer pursuant to section 547 of the Code and therefore subject to avoidance. Choquette filed an answer denying subject matter and personal jurisdiction. It also made a demand for trial by jury. Subsequently, Choquette moved to dismiss on the same grounds. Choquette questions the constitutionality, as applied to these facts, of the jurisdictional scheme adopted by Congress in Title I of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98th Cong., 2d Sess. (1984) (the Reform Act) in light of the holding of the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In addition, Choquette urges that Bankruptcy Rule 7004(d), which permits nationwide service of process, is constitutionally infirm and invalid because its promulgation exceeds the Supreme Court's authority under the Bankruptcy Enabling Act of 1978 (the Bankruptcy Enabling Act), 28 U.S.C. § 2075. In accordance with 28 U.S.C. § 2403(a), we notified the Attorney General of the United States of the pendency of the claims of unconstitutionality; he declined to intervene.

## DISCUSSION

Chapter 6 of title 28 of the United States Code governs the designation and jurisdiction of the bankruptcy judges. Original jurisdiction of all bankruptcy cases and proceedings is vested in the district courts pursuant to 28 U.S.C. § 1334. The district court may then refer to the bankruptcy judges for its district any or all cases or proceedings under title 11 or arising in or related to a case under title 11. 28 U.S.C. § 157(a). As the statute is drawn, bankruptcy judges may hear and enter final orders and judgments in all cases arising under title 11 and in all core proceedings. An appeal from an order or judgment entered in either a case arising under title 11 or a core proceeding is taken only to the district court and "in the same manner as appeals in civil proceedings generally are taken to the court of appeals from the district courts ..." 28 U.S.C. § 158(c). Related, non-core proceedings may also be referred to the bankruptcy judge, but not for final disposition unless the parties expressly consent; rather, the bankruptcy judge submits proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1) and (c)(2). The district court may then review *de novo* any matter timely objected to, together with the proposed findings and conclusions, and enter final judgment.

Congress did not attempt to define "core proceedings" but provided a nonexclusive list of matters within its embrace. 28 U.S.C. § 157(b)(2). Specifically included are "(F) proceedings to determine, avoid, or recover preferences." Choquette contends that regardless of whether a cause of action is stated in federal law, if the defendant objects to a non-Article III tribunal the court must determine whether the nature of the claim requires adjudication by an Article III judge. It must ascertain whether in fact the cause of action arises under federal law or instead is borrowed from common or other state law. Further, it must determine whether a "private right" is being asserted. *See Thomas v. Union*

*Carbide Agric. Products Co.*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). If the "federal" claim derives from state or common law or if the right asserted is a private one, Choquette contends that adjudication by a non-Article III tribunal (here the bankruptcy court) is unconstitutional. Choquette relies upon three Supreme Court decisions for this proposition. *Northern Pipeline Constr. Co., Inc. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *Thomas v. Union Carbide Agric. Products Co., supra*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985); and *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986).

■ The Ninth Circuit has recently reviewed and upheld the constitutionality of the bankruptcy court's jurisdiction to finally determine a state law fraudulent transfer action "borrowed" by the bankruptcy trustee pursuant to 11 U.S.C. § 544. *Duck v. Munn (In re Mankin)* 823 F.2d 1296 (9th Cir.1987), petition for cert. filed Oct. 26, 1987. Although *Mankin* is at first blush distinguishable because decided with reference to section 544 of the Code (which expressly permits the avoidance of transfers avoidable under state law), we find the court's analysis applies with even greater force to a preference action, which is based on federal statutory law. In upholding the district court's reversal of the bankruptcy judge's dismissal of the complaint, the circuit court distinguished *Marathon*, a breach of contract and warranty action, from a fraudulent transfer action, noting that the *Marathon*-type action was not inherently connected with the bankruptcy case, as was the avoidance action. The court explained that the trustee was acting pursuant to his responsibilities under the federal bankruptcy law on behalf of the creditors to facilitate the restructuring of the debtor-creditor relationship.

The *Mankin* court also analyzed the public rights doctrine as construed by the Supreme Court in *Marathon, supra*, 458 U.S. at 67–68, 102 S.Ct. at 2869–70; *Union Carbide, supra*, 473 U.S. at 586, 598, 105 S.Ct. at 3336, 3342 (1985) and *Commodity Futures Trading Comm'n v. Schor, supra*, 106 S.Ct. at 3258, 3259. It concluded that the doctrine basically embodies the historical underpinnings of the scope of proceedings which must be determined by an Article III tribunal. Because historically adjudication of core bankruptcy proceedings requires less Article III supervision, and Congress has elected to denominate certain proceedings as core, the circuit court determined that deference should be paid to Congress' choice.

Finally, the court reviewed the relation between a claim that arises under state law and one which arises under federal law but invokes a state-created right. It determined that "the crucial consideration is not which sovereign created the right, but rather whether Congress utilized the right for federal purposes." The purpose in creating the right in issue was to effectuate federal policy, the restructuring of debtor-creditor relations. Thus, adjudication by a non-Article III tribunal did not run afoul of the constitution.

We agree with the analysis in *Mankin*, which dictates the same result here. Further, the arguments Choquette now raises were advanced and rejected in *Associated Grocers of Nebraska Cooperative, Inc. v. American Home Products Corp. (In re Associated Grocers of Nebraska Cooperative, Inc.)*, 62 B.R. 439 (D.Neb.1986). We cannot explain any better or more eloquently than did Judge Beam there the reasons why final adjudication of a preference action by a bankruptcy judge does not run afoul of Article III.

■ We agree with Choquette that, absent the defendant's consent to jurisdiction, *Schor* mandates that we ascertain whether the nature of the claim is such that only an Article III tribunal has the power to determine it. *See Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856); *Marathon, supra*, 458 U.S. at 90, 102 S.Ct. at 2881; *Union Carbide, supra*, 105 S.Ct. at 3336. The required analysis has already been applied to the adjudication by bankruptcy judges of core proceedings, including preference actions in particular, and been found to pass constitutional

muster. *Mankin, supra,* 823 F.2d 1296; *Sommers v. Burton (In re Conard Corp.),* 806 F.2d 610 (5th Cir.1986); *DuVoisin v. Anderson (In re Southern Industries Banking Corp.),* 66 B.R. 349 (Bankr.E.D. Tenn.1986) (decided subsequent to *Schor,* holding the statute conferring jurisdiction on bankruptcy judges to determine preference actions is constitutional in the wake of *Marathon, Union Carbide,* and *Schor); Associated Grocers, supra,* 62 B.R. 439. As those courts have concluded, a preference action arises under federal law and is integrally related to the restructuring of the debtor-creditor relationship. Accordingly, the designation of a preference action as core, and the granting of jurisdiction to the bankruptcy judges to determine it, are constitutional.

Having concluded that we are vested with the power to adjudicate preference actions in general we turn to whether we may adjudicate this preference action in particular. Service was effected precisely as mandated by rule 7004, which permits nationwide service by mail. Choquette contends that the Supreme Court had no authority to authorize the nationwide service permitted in subdivision (d) of the rule because the rule is inconsistent with the Judiciary Act, as amended, and has no other statutory basis for its promulgation. The Trustee's short answer is that 28 U.S.C. § 1334 provides the statutory basis for nationwide service of process. We disagree with both arguments. Although 28 U.S.C. § 1334 does not in and of itself authorize nationwide service of process, rule 7004(d) has the force of law, is not inconsistent with the Judiciary Act and is consistent with 28 U.S.C. § 1334.

Choquette's position rests upon *Violet v. Picillo,* 613 F.Supp. 1563 (D.R.I.1985). In *Violet* the Attorney General of the state of Rhode Island sought relief from about thirty parties pursuant to the Comprehensive Environmental Response Compensation and Liability Act. (CERCLA), 42 U.S.C. § 9601, *et seq.* and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* Four of the defendants who were each incorporated out of state and had little, if any, contact with

Rhode Island moved to dismiss for lack of personal jurisdiction. The state opposed the motion arguing, among other things, that Congress authorized nationwide service of process when it enacted CERCLA for those who were sued under its terms. The court reviewed the express language of the statute and after, finding nothing permitting nationwide service of process, concluded that while "a rule of nationwide service of process under CERCLA has much to commend it, and would be the rule most consistent with Congress objectives . . . the decision whether to allow extra territorial process is for the Congress, and not the courts, to make." We have no quarrel with the decision, but find it inapposite inasmuch as rule 7004 was promulgated by the Supreme Court, as Congress' rule-making delegate.

The Judiciary Act, at 28 U.S.C. § 1693, provides that "Except as otherwise provided by Act of Congress, no person shall be arrested in the district for trial in another in any civil action in a district court." Thus, as the *Violet* court recognized, 613 F.Supp. at 1569, it is clearly within Congress' power to provide for service of process anywhere within the United States. *Mississippi Pub. Corp. v. Murphree,* 326 U.S. 438, 442, 66 S.Ct. 242, 244–45, 90 L.Ed. 185 (1946); *Marsh v. Kitchen,* 480 F.2d 1270, 1273–74 n. 8 (2d Cir.1973) (Congress may authorize service of process anywhere in the United States, "[b]ut in the absence of a federal statute, or a procedural rule having the force of a statute, . . . such service is unavailable."); *Arrowsmith v. United Press International,* 320 F.2d 219, 226 (2d Cir.1963) (Congress or its rulemaking delegate can authorize a district court to exercise jurisdiction over foreign corporations); *Robertson v. Railroad Labor Board,* 268 U.S. 619, 622, 45 S.Ct. 621, 622–23, 69 L.Ed. 1119 (1925) ("Congress has power . . . to provide that the process of every district court shall run into every part of the United States." citing *Toland v. Sprague,* 37 U.S. (12 Pet) 300, 9 L.Ed. 1093 (1838) and *United States v. Union Pacific R.R. Co.,* 98 U.S. (8 Otto) 569, 604, 25 L.Ed. 145 (1878)). Since Congress undeniably possesses the power to provide for extra-

territorial service of process, it also has the power to delegate to the Supreme Court the drafting of a rule which implements this power. And as the Judiciary Act expressly contemplates that Congress may provide for extra-territorial service of process, a rule promulgated by Congress' designee and upon which Congress effectively passes is not, in our view, inconsistent with 28 U.S.C. § 1693.

In 28 U.S.C. § 2075 Congress provided that the general bankruptcy rules prescribed by the Supreme Court "shall not take effect until they have been reported to Congress by the Chief Justice ... and until the expiration of ninety days after they have been thus reported." Thus, unless Congress made some change to the rules, they were effectively adopted by Congress and became law. In this manner, Congress implicitly authorized nationwide service of process. The procedure was very similar to that set forth in the U.S. Constitution Article 1 § 7. That section provides that every bill which is passed by the House of Representatives and the Senate shall be presented to the President and if not signed by him within ten days shall become law. Because Congress chose to employ this same type of procedure to effectuate the Bankruptcy Rules, Congress has given its stamp of approval and has "provided otherwise"—in a bankruptcy proceeding, nationwide service of process is appropriate.

In *Hogue v. Milodon Engineering, Inc. (In re Hogue)*, 736 F.2d 989 (4th Cir.1984), the circuit court, reversing the district court, determined that nationwide service of process under former bankruptcy rule 704, the predecessor to rule 7004, was constitutional and that venue requirements would serve to protect defendants from onerous litigation. The Fourth Circuit clearly and unequivocally equated the promulgation of a rule by Congress' delegate with congressional authorization. *Id.* at 991.

Nothing distinguishes the manner in which former rule 704 was promulgated from the manner in which rule 7004 was promulgated. Every other court which has

considered whether Congress by virtue of rule 7004 authorized nationwide service of process in bankruptcy cases has concluded that it has. *See, e.g., B.W. Development Company, Inc. v. John B. Pike & Son, Inc. (In re B.W. Development Company, Inc.)*, 49 B.R. 129 (Bankr.W.D.Ky.1985); *Allard v. Benjamin (In re DeLorean Motor Co.)*, 49 B.R. 900 (Bankr.E.D.Mich. 1985); *Pongetti v. Laws (In re Self)*, 51 B.R. 683 (Bankr.N.D.Miss.1985); *Wyandotte Industries v. E.Y. Neill & Company (In re First Hartford Corporation)*, 63 B.R. 479 (Bankr.S.D.N.Y.1986), proposed findings of fact and conclusions of law adopted by order of the district court, No. 81 B 10390, Adv. No. 82-5456A (S.D.N.Y. January 15, 1987). Professor King in the *Collier* treatise also concludes that rule 7004(d) is constitutional, even with respect to non-core related proceedings, which of course this is not. 9 L. King, *Collier on Bankruptcy*, ¶ 7004.06 (15th ed. 1987).

Rule 7004(d) is fully in keeping with 28 U.S.C. § 1334(b), which confers on the district courts original but not exclusive jurisdiction of all civil proceedings with a nexus to a bankruptcy case, be those proceedings core or non-core. The statute is identical to former 28 U.S.C. § 1471(b). The legislative history to the latter statute made it clear that Congress intended that the bankruptcy courts be vested with *in personam* jurisdiction over defendants not otherwise amenable to suit in the federal courts. *See In re Schack Glass Industries, Co., Inc.*, 20 B.R. 967, 970 (Bankr.S.D.N.Y.1982) citing H.Rep. No. 595, 95th Cong. 1st Sess. p. 445 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. More recently, the Sixth Circuit noted that 28 U.S.C. § 1334(b) contains the same broad grant of jurisdiction as former § 1471 and concluded that Congress intended that "[t]he adjunct bankruptcy courts will exercise in personam jurisdiction as well as in rem jurisdiction in order that they may handle everything that arises in a bankruptcy case." *Kelley v. Nodine (In re Salem Mortgage Co.)*, 783 F.2d 626, 632–33 and n. 18 (6th Cir.1986).

Although Choquette questions the propriety of nationwide service of process be-

cause of the disparate types of disputes and litigants which inevitably will find their way to the bankruptcy courts, we are not as troubled by this as is Choquette. For under the Code defendants are given not only the protection of the venue requirements but of the broad abstention doctrine contained in subdivision (c)(1) of section 1334. As the *Salem* court explained

> the limitations in section 1334(c)(1) are sufficient to keep federal jurisdiction from becoming overextended. Congress wisely chose a broad jurisdictional grant and a broad abstention doctrine over a narrower jurisdictional grant so that the district court could determine in each individual case whether hearing it would promote or impair efficient and fair adjudication of bankruptcy cases.

*Salem*, 783 F.2d at 635.

Given Congress' undeniable power to provide for nationwide service of process, its intention to vest the adjunct bankruptcy courts with pervasive and broad jurisdiction tempered by venue and abstention considerations and its silent approval of rule 7004(d) (which continued unchanged the practice under the predecessor rule), we conclude that rule 7004(d) is unassailable.

■ Finally, we reject Choquette's contention that if it is compelled to defend this proceeding, its right to due process under the Fifth Amendment will be abridged. Choquette concedes, as it must, that in federal question cases, where nationwide service of process is permitted, the "minimum contacts" test set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), does not apply. Because an action to recover a fraudulent transfer or preference is permissibly denominated core and effectuates the policy of federal bankruptcy law, *see In re Mankin, supra*, 823 F.2d at 1309, we believe that such an action is a "federal question" matter for jurisdictional purposes. Therefore, we need not look to minimum contacts but must only determine whether the Fifth Amendment due process requirements are satisfied. *Mariash v. Morrill*, 496 F.2d 1138 (2d Cir.1974). The Fifth Amendment requires that service of

process be reasonably calculated to inform the defendant of the pendency of the proceedings in order that it may be heard in its defense. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). There is no dispute that the Trustee mailed the summons and complaint directly to Choquette, and that Choquette received them in sufficient time to provide it with an opportunity to be heard in its defense. Accordingly, there was no abridgement of Choquette's due process.

In conclusion, this adversary proceeding is core and therefore within our subject matter jurisdiction. Further, we find that the power to promulgate bankruptcy rule 7004(d) was constitutionally vested in the Supreme Court and that the Trustee duly effected service. Accordingly, the motion to dismiss is denied. IT IS SO ORDERED.