### In re VERRAZANO HOLDING CORP., Debtor.

**Shulamith LEVOVITZ, Yitzchok Edeltuch, Hershel Kanarek, Osher Levovitz, Matis Pincus, Isaac Swiatycki,**

**and**

**Elimelech Bluth, Barry Botuck, Naomi Botuck, Shlomo Cweiber, Shmuel Gutfreund, Yaakoz Moshe Gutfreund, Rivka Levovitz, Henry Loebenberg, Reuven Mandel, Myrim Serebrowski, Ralph Shain and Ruth Wilamowsky, Plaintiffs,**

**v.**

**VERRAZANO HOLDING CORP., Yeshiva Beth Henoch, Inc., Uziel Frankel, Judith Potash Siegel, Henoch Potash and Sholom Potash, Defendants.**

Bankruptcy No. 186–62428.
Adv. No. 187–0121.

United States Bankruptcy Court, E.D. New York.

June 1, 1988.

Richard H. Bliss, New York City, for Yeshiva Beth Henoch, Inc., Judith Potash Siegel, Henoch Potash and Sholom Potash.

Harvis & Zeichner by Nathan Schwed, New York City, for debtor.

Weil, Gotshal & Manges by George G. Love III, New York City, for plaintiffs.

## OPINION

MARVIN A. HOLLAND, Bankruptcy Judge:

On June 25, 1987 the plaintiffs filed a complaint in this bankruptcy case (Adv.Pro. 187–0121) setting forth the following four claims for relief respectively:

1) a declaratory judgment that they, together with other parties, are the owners of a certain parcel of property located at 2080 77th Street, Brooklyn, New York (hereinafter "premises");

2) damages for breach of contract against Yeshiva Beth Henoch, Inc. (hereinafter "The Yeshiva"), a third party;

3) damages for tortious interference with contract against the debtor and its principal; and

4) damages for the tort of fraudulent misrepresentation against The Yeshiva and its principals, Judith Potash Siegel and Henoch Potash (also third parties) in an amount equal to the value of the premises.

The third parties now seek dismissal of those claims asserted against them (claims two and four) on jurisdictional grounds, pursuant to Bankruptcy Rules 7012(a) and (h)(3).

### Statement of Jurisdiction

This court has jurisdiction of the subject matter and the parties to this proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a). Venue is properly placed pursuant to 28 U.S.C. § 1409(a).

### Statement of Issue

Whether this court possesses jurisdiction pursuant to 28 U.S.C. §§ 157(c)(1) and 1334 over the second and fourth claims for relief outlined in the complaint.

### Statement of Facts

This adversary proceeding arises out of a contract entered into on September 29, 1980 between Ruth Wilamowsky, as purchaser, and The Yeshiva, acting by and through Judith Potash, as seller of the premises. The contract called for payment of $22,000, $2,000 of which was to be paid on contract and for a conveyance subject to (i) a first mortgage on the premises amounting to approximately $47,000 as of September, 1980, and (ii) a second mortgage amounting to approximately $25,000 as of September, 1980. Thereafter, Ruth Wilamowsky assigned her contract rights to Myrim Serebrowski whose rights were, in turn, assigned to Shulamith Levovitz, the current nominee and one of the plaintiffs to this proceeding.

On October 13, 1980, The Yeshiva requested permission, pursuant to section 511 of New York's Not for Profit Law,[1] to

---

1. Section 511 of New York's Not for Profit Law provides in pertinent part:

consummate the contract of sale entered into between Wilamowsky and The Yeshiva. Annexed to the petition was a resolution dated September 22, 1980, certified by The Yeshiva's secretary, Judith Potash, authorizing and directing the appropriate officers of the corporation to enter into and consummate the sale. On November 24, 1980 the petition requesting approval of the sale was granted by the Supreme Court of the State of New York (Kooper, J.).

On December 4, 1980 the original signatories to the contract entered into a letter agreement detailing their respective obligations and calling for payment of the balance of $20,000 on or before December 31, 1982. Within the time set forth, the purchasers tendered full payment of the balance due and demanded tender of the deed. The Yeshiva refused, claiming that the contract entered into between the parties had not been authorized by the Yeshiva's trustees and therefore invalid.

The non-signatory trustees submitted the validity of the Wilamowsky contract of sale to arbitration before a rabbinical tribunal ("Beth Din"). It is not clear from the record whether Ruth Wilamowsky received notice of the rabbinical arbitration. In any event, she did not participate. On April 22, 1983, that tribunal held the contract null and void since it had not been approved by the proper authorities of The Yeshiva.

The non-signatory trustees moved, without notice to the contract vendee, Ruth Wilamowsky, to confirm the Beth Din's decision. On July 27, 1983, the Supreme Court of the State of New York (Vaccaro, J.) entered an order confirming the Beth Din's decision.

In August, 1983, The Yeshiva entered into a second contract for the sale of the premises, this time to the debtor. On October 5, 1983, the Supreme Court for the State of New York (Pizzuto, J.), approved the contract authorizing that sale. A deed was executed on October 31, 1983, and recorded on February 27, 1984. In the interim however, on January 31, 1984, Ruth Wilamowski, the original contract vendee, had assigned her rights to Serebrowski. On or about February 6, 1984, Serebrowski commenced an action against The Yeshiva for specific performance on the September 29, 1980 contract and filed a lis pendens. On March 5, 1984, Serebrowski further assigned his rights under the contract to Levovitz who then commenced a separate action against The Yeshiva for specific performance and also filed a lis pendens. The Yeshiva, pursuant to New York's Civil Practice Law and Rules §§ 3211(a)(1), (3) and (7), moved to dismiss Levovitz' action.

By order dated September 7, 1984, Special Term (Vaccaro, J.) granted The Yeshiva's motion to dismiss. Thereafter, on January 18, 1985, a motion for renewal and reargument was made and denied by order of the Supreme Court (Krasman, J.). An appeal was taken and on November 17, 1986, the Appellate Division in *Levovitz v. Yeshiva Beth Henoch, Inc.*, 120 A.D.2d 289, 508 N.Y.S.2d 196 (1986) reversed Justice Vaccaro's order dated September 7, 1984, remanding for further proceedings in accordance with its instructions.

The Appellate Division instructed the Supreme Court to determine whether The Yeshiva had authorized the September 29, 1980 contract of sale. If unauthorized, an appropriate order should be entered dismissing the complaint for specific performance and the judgment of Justice Vaccaro dated July 27, 1983 setting aside the order of Justice Kooper dated November 24, 1980 may stand. If, on the other hand, The Yeshiva had authorized the contract of sale mentioned above, then an appropriate order should be entered (1) vacating the judgment of Special Term (Vaccaro, J.) dated July 27, 1983 and reinstating the order of Special Term (Kooper, J.) dated November 24, 1980, (2) vacating the order of Special Term (Pizzuto, J.) dated October 5, 1983, and (3) granting specific performance to either plaintiff Levovitz or Wilamowsky, depending on a resolution of a dispute re-

A corporation required by law to obtain leave of court to sell, lease, exchange or otherwise dispose of all or substantially all its assets, shall present a verified petition to the supreme court of the judicial district, or the county court, wherein the corporation has its office or principal place of carrying out the purposes for which it was formed.

garding the assignment from Wilamowsky to Serebrowski, and directing Verrazano Holding Corp. to convey the subject realty.

After the Appellate Division's order of remand, but prior to the commencement of the remanded proceedings, Verrazano Holding Corp., on December 19, 1986, filed its petition herein.

The assignee of the original purchaser thereupon filed this proceeding alleging an entitlement of title to, and ownership of, the premises.

During the course of this proceeding an application was granted pursuant to 11 U.S.C. § 363(b) authorizing the debtor to sell the subject premises, free and clear of all liens and claims, such liens and claims, if any, to attach to the proceeds. An appeal was taken, stay was denied, and the sale consummated. The premises are no longer property of the estate.

## DISCUSSION

The complaint alleges plaintiffs' entitlement to the premises upon the following grounds:

A) The contract had been duly authorized by The Yeshiva's trustees. Assuming arguendo that the trustees did not formally approve the contract, "their knowledge and tacit approval thereof was adequate to constitute it a due and enforceable obligation of the Yeshiva." Complaint at 9.

B) Henoch Potash and Judith Potash, as officers and trustees of The Yeshiva, had apparent authority to enter into and consummate the contract and the purchasers relied upon that authority. *Id.*

C) The subsequent conduct of the Yeshiva, the Potashes and The Yeshiva's trustees operated to ratify and confirm such contract. *Id.;* and

D) The purchasers reasonably and detrimentally relied upon the enforceability of the contract of sale by performing thereunder, hence The Yeshiva is equitably estopped from denying the validity thereof. *Id.*

Mr. Bliss, counsel to the third parties, asserts in his original answer that this court lacks subject matter jurisdiction to entertain those claims asserted against The Yeshiva and the Potashes. His amended answer asserts that the second and fourth claims outlined in the complaint are "non-core" claims, between the two sets of strangers to this bankruptcy case, pointing out that "such claims are within the jurisdiction of this court only if they are 'related to' the bankruptcy case under 28 U.S.C. § 1334(b)." Movant's notice of motion at 3. Since "the outcome of these claims, whatever it may be, cannot affect the estate of the debtor" *id.,* jurisdiction is lacking and dismissal is mandated.

In order to analyze these jurisdictional defenses, a brief discussion of the recent history of the jurisdiction of the bankruptcy court is in order.

As a part of the 1978 Bankruptcy Reform Act which created the current Bankruptcy Code Congress enacted 28 U.S.C. § 1471(b) which gave the district court "original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11", and further provided in § 1471(c) that "the bankruptcy court for the district in which a case under Title 11 is commenced shall exercise all of the jurisdiction conferred by the section on the district courts."

After the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), held that the exercise by non-Article III bankruptcy judges of such broad and sweeping jurisdiction was unconstitutional, Congress, in the 1984 amendments, repealed all of § 1471. *Wood v. Wood (In re Wood),* 825 F.2d 90, 93 (5th Cir.1987); *Commercial Heat Treating of Dayton, Inc. v. Atlas Industries, Inc. (In re Commercial Heat Treating of Dayton, Inc.),* 80 B.R. 880, 885 (Bankr.S.D.Ohio 1987).

In accord with *Northern Pipeline,* Congress reconstituted bankruptcy court jurisdiction and enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"). This legislation conferred upon the district court jurisdiction over Ti-

tle 11 cases, as had been the case under § 1471 of the 1978 Act. However, "there is no longer any provision analogous to former Section *1471(c)* which authorized the bankruptcy court to exercise 'all' such jurisdiction." *Acolyte Electric Corp. v. The City of New York*, 69 B.R. 155, 162 (Bankr.E.D.N.Y.1986) (emphasis added), *aff'd*, No. 86–0329 (JBW) (E.D.N.Y. Mar. 27, 1987).

As amended by BAFJA, 28 U.S.C. § 1334 now provides that—

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

(d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

28 U.S.C. § 157 now authorizes the district court to refer to the bankruptcy judges for the district "any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11.... Bankruptcy judges may hear and determine all cases under Title 11 and all core proceedings (nonexclusively defined in sub-paragraph (b)(2)) arising under Title 11, or arising in a case under Title 11 referred under subsection (a) ... and may enter appropriate orders and judgments...."

Post–BAFJA, the district court, pursuant to 28 U.S.C. § 1334, is therefore empowered with jurisdiction over four types of matters:

1) "cases under title 11",

2) proceedings "arising under" title 11,

3) proceedings "arising in" a case under title 11, and

4) proceedings "related to" a case under title 11.

The first category refers to the district court's original and exclusive jurisdiction over the bankruptcy petition itself. 28 U.S.C. § 1334(a). 28 U.S.C. § 1334(b) provides the district courts with original, but not exclusive, jurisdiction of any civil proceedings arising under title 11, or arising in or related to a case under title 11. (2, 3, and 4 outlined above).

Clearly, then, in old § 1471 Congress had intended to confer upon those courts which were to exercise bankruptcy jurisdiction very broad jurisdiction over peripheral matters. The Supreme Court in *Northern Pipeline* found nothing wrong with such a broad grant so long as it was exercised by an Article III judge. *See In re Wood*, 825 F.2d at 93–4. 28 U.S.C. § 1334 now gives this jurisdiction to the district court and authorizes delegation to the bankruptcy court of so much thereof as Congress believes to be constitutionally permissible.

Since 28 U.S.C. § 1334(b) was taken from § 1471(b) of the 1978 Act, the legislative history and judicial interpretations of that section are instructive. *In re Wood,* 825 F.2d at 92. The "legislative history indicates that the phrase 'arising under title 11, or arising in or related to cases under title 11' was meant, not to distinguish between different matters, but to identify collectively a broad range of matters subject to federal bankruptcy jurisdiction," *id.* at 92, and that Congress intended to grant federal courts broad power to adjudicate all matters having an effect on the bankruptcy case, subject only to a concern that an overly broad interpretation of section 1334 might bring into federal court those matters best suited for state court adjudication. The issue which we now face is the extent to which Congress in the 1984 amendments intended the bankruptcy court to exercise this jurisdiction and the extent to which such jurisdiction may constitutionally be conferred upon us.

■ This court believes that while Congress in enacting BAFJA intended to continue providing the district court with the broadest constitutionally permissible grant of jurisdictional power to adjudicate all matters connected to a bankruptcy case or proceeding, as it had in the 1978 legislation, the exercise of that jurisdiction by the Bankruptcy Court was subject to limitations and restrictions Congress believed necessary in order to avoid the constitutional impediments pointed out in *Northern Pipeline. Accord FDIC v. Majestic Energy Corp. (Matter of Majestic Energy Corp.),* 835 F.2d 87, 90 (5th Cir.1988); *In re Arkansas Communities, Inc.,* 827 F.2d 1219, 1221 (8th Cir.1987); *In re Wood,* 825 F.2d at 90; *In re Mankin,* 823 F.2d 1296, 1300–02 (9th Cir.1987); *In re Arnold Print Works, Inc.,* 815 F.2d 165, 169–70 (1st Cir. 1987); *In re Double TRL, Inc.,* 65 B.R. 993, 999–1002 (Bankr.E.D.N.Y.1986).

Congress, in promulgating 28 U.S.C. § 1334(c)(1), provided the district court with *sua sponte* power to abstain wherever appropriate "in the interest of justice, or in the interest of comity with State courts or

respect for state law." Rather than restricting federal bankruptcy jurisdiction, Congress reasoned that those "concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case." *In re Wood,* 825 F.2d 90 at 93; *Accord In re Salem Mortgage Co.,* 783 F.2d 626, 635 (6th Cir.1986); *In re Outlet Co. Stores,* 82 B.R. 694, 698–99 (Bankr.S.D.N.Y.1988). This is consistent with the Supreme Court holding in *Northern Pipeline.*

Congress, by promulgating 28 U.S.C. §§ 157(b)(2) and (c)(1) drew a statutory distinction between core and non-core proceedings which was enacted to address and resolve the constitutional infirmities enunciated in *Northern Pipeline* effectually restricting the jurisdiction of bankruptcy courts to adjudicate those matters having a tangential and remote effect on the bankruptcy. This new legislative enactment provides that absent express consent by the parties, final adjudicatory powers over non-core, related proceedings shall remain with the district court, *In re Lafayette Radio Electronics Corp.,* 761 F.2d 84, 90 (2d Cir.1985), an Article III tribunal possessing "the essential attributes of judicial power." *Northern Pipeline,* 458 U.S. 50, 77, 102 S.Ct. 2858, 2874, 73 L.Ed.2d 598 (1982) (quoting *Crowell v. Benson,* 285 U.S. 22, 51, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932)).

■ The legislative history of BAFJA clearly indicates that "arising under" and "arising in" jurisdiction should be broadly construed so as to include any matter under which a claim is made pursuant to title 11. However, BAFJA fails to give definition to "related to" jurisdiction.

A survey of the earlier Code cases indicates that prior to *Northern Pipeline* bankruptcy courts did not hesitate in finding a sufficient nexus between a title 11 case and a civil proceeding to confer upon itself "related to" jurisdiction.[2]

---

2. *See, e.g., Cohen v. Beneficial Fin. Co. of Fla.,*     *Inc. (In re Claypool),* 2 C.B.C.2d 64 (M.D.Fla.

After *Northern Pipeline,* courts began to develop different standards to determine whether subject matter jurisdiction existed in a proceeding claimed to be "related to" a particular bankruptcy case. The usual articulation of the "related to" test requires a determination of "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy", *In re Wood,* 825 F.2d 90 at 93; *Bobroff v. Continental Bank (In re Bobroff),* 766 F.2d 797, 800 (3d Cir.1985); *Pacor v. Higgins (In re Pacor),* 743 F.2d 984, 994 (3d Cir.1984); *Turner v. Ermiger (In re Turner),* 724 F.2d 338, 342 (2d Cir. 1983); *Beebe International, Inc. v. French American Banking Corp. (In re Wedtech),* 72 B.R. 313, 315 (Bankr.S.D.N.Y.1987); *Geschke v. CLDC Management Corp. (In re CLDC Management Corp.),* 58 B.R. 176, 179 (Bankr.W.D.Ill.1985), which will turn on the extent to which "the outcome would alter the debtor's rights, liabilities, options or freedoms of action (whether positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.),* 810 F.2d 782–786 (8th Cir.1987); *Pacor v. Higgins,* 743 F.2d at 994.

■ The fact that the debtor itself is not a party to the proceeding does not, without more, necessarily preclude the proceeding from qualifying as one which is "related to". *Pacor v. Higgins,* 743 F.2d at 994. However, it is always the burden of the party alleging bankruptcy court jurisdiction to establish its existence over the matter in dispute. *Elscint, Inc. v. First Wisconsin Financial Corp. (In re Xonics, Inc.),* 813 F.2d 127, 132 (7th Cir.1987); *State ex rel. Roberts v. Mushroom King, Inc.,* 77 B.R. 813, 820 (D.Or.1987); *see generally Lehigh Valley Indus. v. Birenbaum,* 527 F.2d 87, 92 (2d Cir.1975). In this case, the plaintiffs have failed to meet this burden.

■ Assuming the plaintiffs were to succeed in their breach of contract and fraudulent misrepresentation claims (claims two and four), the judgment granted would entitle them to compensatory damages against The Yeshiva and its principals, both non-debtor, third party entities. The plaintiffs would secure no entitlement as against the debtor, nor would The Yeshiva or its principals have a contingent claim for contribution or indemnification from the debtor.

Even were we to assume a claim to indemnification or contribution existed against the debtor, this court would still lack jurisdiction to adjudicate the claim. The plaintiffs' ability to obtain and collect upon the judgment would be totally unaffected by any action The Yeshiva and its principals might take against the debtor and its principal. *In re Maislin Indus., U.S., Inc.,* 75 B.R. 170, 172 (Bankr.E.D. Mich.1987). The outcome of claims two and four, either in favor of or against the plaintiffs, would in no way alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively). Nor would it deplete the assets of the estate, or lead to a restructuring of the debtor/creditor relationship. *See, e.g., In re Xonics, Inc.,* 813 F.2d at 132 (where the court held that jurisdiction may exist if there is a nexus between the disposition of those claims and the treatment of other creditors of the bankrupt, insofar as it effects the ultimate amount of property available to creditors or restructures the allocation of property among creditors).

■ The plaintiffs also request that this court declare them the rightful owners of the premises. The standard for seeking this declaration in federal courts is outlined in the Declaratory Judgment Act, 28 U.S.C. § 2201 ("Act"). The Act states "[i]n a case of *actual* controversy ... any court of the United States ... may declare the rights and other legal relations of any interested

1980) (Truth in Lending Act violations); *Trim-Cut Co., Inc. v. Beasley (In re Trim Lean Meat Products, Inc.),* 4 B.R. 243 (D.Del.1980) (willful appropriation of corporation opportunity); *Griffith v. Realty Executives, Inc. (In re Griffith),* 6 B.R. 753 (Bankr.N.M.1980) (recission of contract on fraudulent misrepresentation grounds); *Family Savings & Loan Assn. v. Calabria (In re Calabria),* 5 B.R. 73 (D.Conn.1980) (mortgage foreclosure action).

party" (emphasis added).[3] This court therefore is only empowered to issue a declaratory judgment in an actual controversy; if an actual controversy does not exist, the claim is moot and this court is without jurisdiction to grant the relief requested.

With regard to the prerequisite of "actual controversy", this court authorized the debtor to sell the premises to a third party. An appeal was taken and a stay pending the appeal denied by the District Court. Thereafter, a sale was consummated and title to the premises transferred to a third party good-faith purchaser for value. Since the debtor neither retains title to the premises, nor seeks any entitlement to it, the claim for specific performance is a "right without a remedy", no longer justiciable in this court, although there still may exist in the plaintiffs a right to the proceeds of that sale. Upon the sale of the premises to the third party this court lost jurisdiction over the premises, *In re Xonics, Inc.*, 823 F.2d at 132, since the debtor or its estate no longer has any interest in the premises, *In re Muller*, 72 B.R. 280, 284 (C.D.Ill.1987), and does not allege any further equitable interest in it. *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1187 (7th Cir.1986) (adjustment of the parties' rights to property of the estate subject to liens is a central function of bankruptcy law—but jurisdiction lapses when the property leaves the estate). When the closing was consummated the divestiture of the debtor's title resulted in a divestiture of this court's jurisdiction over the premises.

The third claim for relief outlined in the complaint alleging tortious interference with contract by the debtor-in-possession, Verrazano Holding Corp., and its principal, is a related proceeding. To the extent that the debtor did in fact interfere with the contractual relationship between the original purchasers and The Yeshiva, the original purchasers have a claim against the debtor and its estate. If they timely file a proof of claim this court's core jurisdiction may be invoked to determine both its existence and amount in a proceeding between the debtor and the claimant. Additionally, if the plaintiffs elect to litigate in an independent proceeding against not only the debtor, but against its principals as well, the extent to which that action may be "related to" this bankruptcy case is not presently before this court and need not be addressed.

The bankruptcy court, however, may abstain from a "related to" proceeding in favor of state court adjudication. 28 U.S.C. § 1334(c)(1). The primary criteria for the exercise of discretionary abstention are whether there exists unsettled questions of state law, *See Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940); *In re Earle Indus., Inc.*, 72 B.R. 131, 133 (Bankr.E.D.Pa. 1987); *In re Double TRL, Inc.*, 65 B.R. 993, 1002 (Bankr.E.D.N.Y.1986), or whether the action implicates important state interests or policies. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Abstention "in the interest of justice or in the interest of comity or respect for State law", 28 U.S.C. § 1334(c)(1), must also be considered as well as concerns of case administration and judicial economy. Discretionary abstention is further appropriate where the action could not have been commenced in federal court absent bankruptcy jurisdiction and the issues can be timely adjudicated in state court. *In re Titan Energy, Inc.*, 837 F.2d 325, 333 (8th Cir. 1988).

---

3. 28 U.S.C. § 2201 refers to "any Court of the United States." 28 U.S.C. § 451 defines a "Court of the United States" as one which is created by Act of Congress the judges of which are entitled to hold office during good behavior. The Third Circuit in *Matter of Becker's Motor Transp., Inc.*, 632 F.2d 242 (3d Cir.1986), *cert. denied, Becker's Motor Transp., Inc. v. Dept. of Treasury, Internal Revenue Service*, 450 U.S. 916, 101 S.Ct. 1358, 67 L.Ed.2d 341 (1981), concluded that bankruptcy courts are not courts whose judges hold office during good behavior, suggesting that they are not Courts of the United States. *See also Matter of Richardson*, 52 B.R. 527 (Bankr.W.D.Mo. 1985) (where the court similarly suggests that the bankruptcy court is not a Court of the United States to which 28 U.S.C. § 1927 applies). We need not address whether 28 U.S.C. § 2201 applies to the bankruptcy court since the request for declaratory judgment is moot.

All four claims for relief set forth in the complaint are predicated upon the same operative facts. Although this court has jurisdiction over claim three, the *sine qua non* of that claim, as well as claims two and four, are premised upon state law. These claims require interpretation of state contract and tort doctrines, which determination and interpretation invokes precisely the type of issues which the Supreme Court in *Northern Pipeline* deemed best left to state court resolution. Further, no diversity jurisdiction exists between the parties to this proceeding, and no bankruptcy issues exist upon which this court might claim a special expertise.

We therefore believe abstention from this proceeding is warranted in the interest of judicial economy, interest of comity with state courts, and respect for state law. This court, aware that abstention should be utilized only in limited circumstances, notes that no prejudice is directed toward any parties to this proceeding since it is only at the pleading stage, no serious discovery has yet to take place, and nothing in the record suggests that this matter could not be timely litigated in a state court. This court, however, retains jurisdiction with respect to the enforcement of any judgment or decree so obtained to the extent it may affect the conduct of the case or property of the estate.

## CONCLUSIONS OF LAW

(1) The second and fourth claims for relief sought in the complaint are non-core, non-related matters for which this court lacks jurisdiction.

(2) The first claim for relief is moot, and therefore not justiciable in this court.

(3) To the extent that the third claim for relief may be a related proceeding, this court abstains from hearing it pursuant to 28 U.S.C. § 1334(c)(1).

SETTLE ORDER in accordance with Bankruptcy Rules 5011(b) and 9033.