MARGARET DOLESE BROWN, MARY DOLESE COURTIS, and PETER DOLESE COURTIS, DAVID MICHAEL COURTIS, MARGARET WEBER COURTIS and JANE APPLETON COURTIS, minors, by their guardian, MARY DOLESE COURTIS,

Plaintiffs,

*vs.*

ROGER DOLESE, individually and as Trustee for the benefit of MARY DOLESE COURTIS, PETER DOLESE COURTIS, DAVID MICHAEL COURTIS, MARGARET WEBER COURTIS and JANE APPLETON COURTIS, DOLESE BROS. CO., a Delaware corporation, and THE DOLESE COMPANY, a Delaware corporation,

Defendants.

*New Castle, Sept. 11, 1959.*

*Richard F. Corroon,* of Berl, Potter & Anderson, Wilmington, and *Harvey A. Fischer,* of Fischer, Sprague, Franklin & Ford, Detroit, Mich., for plaintiffs.

*Robert H. Richards, Jr.,* of Richards, Layton & Finger, Wilmington, for the appearing defendants, Roger Dolese, individually, Dolese Bros. Co. and The Dolese Company.

MARVEL, Vice Chancellor : This case is concerned with the internal affairs of a closely held family corporation known as Dolese Bros. Co. According to the unverified complaint, Margaret Dolese Brown is the holder of 400 shares of the capital stock of such corporation, her sister, Mary Dolese Courtis, is the life beneficiary of 200 shares of such stock held in a trust created under the will of her uncle, Henry Dolese, and the remaining plaintiffs,[1] namely the infant children of Mrs. Courtis, have a contingent remainder interest in the trust property in which their mother is a life beneficiary.

Roger Dolese is a director and president of Dolese Bros. Co. He owns all of the stock of the defendant, The Dolese Company, and is and was at all times during the transactions under attack trustee of the Henry Dolese trust which holds Dolese Bros. Co. stock for the benefit of his sister, Mrs. Courtis, and for her children.

Plaintiffs sue derivatively for the benefit of Dolese Bros. Co., the purpose of the suit allegedly being that of "* * * recovering for said corporation and for its stockholders assets and property of said corporation wrongfully converted and misapplied by Roger, and profits in a large amount gained by Roger from the use of said assets and property * * *."

---

1. Defendants' motion to dismiss, as particularized, argues that the infant plaintiffs are not stockholders entitled to bring an action such as this. However, the will of Henry Dolese is not before me, and the briefs do not deal with these plaintiffs' status as alleged equitable owners of stock. Accordingly, I shall reserve judgment on this portion of defendants' motion.

Dolese Bros Co., which has been a family business for many years, was at the time of the transactions complained of engaged in quarrying and selling limestone, gravel and other building materials and conducting a so-called transit-mix concrete business. In 1942 it had outstanding 3,000 shares of stock, 1,200 of which were owned or controlled by the so-called Schofield branch of the family and the balance either directly or equitably by Roger Dolese, his brother, mother and sisters.

On February 6, 1942, evidently to ensure that the business would continue indefinitely in the control of the family, all the stockholders, including Margaret by her mother as trustee, agreed jointly and severally with each other that they would not "* * * sell any of their stock in Dolese Bros. Co. to anyone not a stockholder of Dolese Bros. Co. without first offering to sell their stock to the other stockholders and to the Company."

The complaint goes on to allege that as of September 1946 and for some time prior thereto the transit-mix section of the business had prospered to a much greater degree than the other branches of the business and that as of September 9, 1946, according to information and belief, the corporation had quick assets in an amount in excess of $1,000,000 including cash in excess of $870,000 and was virtually without debt.

It is further alleged that in September 1945 differences between William Schofield, vice-president and a director of the corporation, and Roger Dolese, president, came to a head, differences which, in Roger's opinion, affected his basic business policies and threatened his control. These differences became so acute that William Schofield is claimed to have threatened legal action against Roger, however, ultimately the Schofields agreed to sell their 1,200 shares to Roger for the sum of $725 per share, a price alleged to be substantially less than the real value of such stock "* * * as Roger well knew."

Roger thereupon, according to the complaint, proposed to his sisters that he, they and their mother and brother raise the money to make such purchase, allegedly concealing from plaintiffs the fact that

Dolese Brothers Co. had ample assets and credit to make such purchase in its own name, and inducing plaintiffs to believe that "* * * it was necessary for the future of Dolese Bros. that the Schofields be eliminated as stockholders, that Dolese Bros. was not in a position to purchase their stock and that such purchase would have to be accomplished by cash raised by Roger, plaintiffs and other members of their family."

Plaintiffs, not having the necessary cash available and being unwilling to borrow, declined to participate in the proposed purchase and on information and belief allege that their mother and brother similarly declined. However, plaintiffs aver that they were not adverse to the purchase of the Schofield stock by Dolese Bros. Co., and "* * * had they known and understood its ability to make such purchases, would have readily consented thereto * * *."

The complaint then describes the steps whereby Roger allegedly conspired "with himself and with certain attorneys" to convert the profitable Dolese transit-mix cement business to his own benefit under the guise of purchasing and redeeming the Schofield stock through a newly organized corporation, namely, The Dolese Company, all of the stock in which had been issued to Roger.

After outlining the steps whereby such acquisition was made, Roger is charged with breaches of his fiduciary duty to plaintiffs, who pray that the steps taken by Roger to redeem the Schofield stock be declared void, and that such shares be declared to be the property of Dolese Bros. Co., subject to reissue to the adult plaintiffs herein upon payment of the price of $725 per share. Other relief on an injunctive nature as well as the appointment of a receiver and an accounting by Roger of moneys received by him as a result of the transactions complained of is also prayed for, but the basic relief sought is an order declaring in effect that Roger, while in a fiduciary position, improperly seized a corporate opportunity and that the shares of stock acquired by him from the Schofields and thereafter redeemed, be deemed to be the property of Dolese Bros. Co.

The appearing defendants have not answered, having moved to dismiss the complaint on several grounds, namely (1) the complaint

does not meet the requirements of Rule 9(b), Chancery Court Rules, Del.C.Ann., (2) the transactions complained of were not only entirely proper but received the unanimous approval of the stockholders, (3) the complaint shows on its face that plaintiffs have no standing to maintain this action, (4) statute of limitations, (5) laches. In support of their motion defendants evidently rely on the formal record of the transaction submitting additionally the minutes of the November 27 meeting under the affidavit of their attorney, and they profess inability to understand the logic of plaintiffs' complaint that Dolese Bros. Co. should have acquired the Schofield stock when they as stockholders of the corporation declined to participate personally in such a transaction.

Turning to the formal documents, there would appear to be little doubt about the corporate steps actually taken by Roger on his own behalf, in the name of the corporation and in the name of members of his family to eliminate the Schofields as stockholders, most of the pertinent corporate records being before me. Defendants contend that these records establish clearly that the transaction received unanimous stockholder approval and that accordingly plaintiffs would have no standing to complain even if Roger had been guilty of a breach of fiduciary duty, a charge which defendants deny. There being such formal stockholder approval, defendants argue that any complaint against Roger in his capacity as trustee must be made in a direct action against him as such, a capacity in which he has not appeared in this action.

The steps taken to bring about the elimination of the Schofield interest were basically as follows. First, a meeting of stockholders of Dolese Bros. Co. was held, attended by all stockholders of the corporation other than the Schofields. At this meeting Margaret voted in person as did the others, but in Margaret's case such vote was cast under an unusual temporary and limited suspension of her general and drastic grant of power of attorney to Roger concerning her shares. The Schofield managerial power was thereupon eliminated by the election of a board consisting of Jane Weber Dolese, the mother, Roger, and a corporate employee named George E. Howard. The Dolese Company was then organized, and on November 19, 1946 entered into an agreement to purchase the Schofield stock allegedly in violation of the Schofields' undertaking along with other members of the family

not to sell to any one not a stockholder of Dolese Bros. Co. without first offering to sell their stock to the other stockholders and to the company.

A special meeting of directors was then held on November 26, 1946, at which the only directors in attendance were Roger and George Howard. At this meeting it is charged by plaintiffs that "* * * Roger and his creature, Howard * * * fraudulently adopted a resolution under which Dolese Bros. waived its rights under the February 6, 1942 Agreement to purchase the Schofield stock * * *." It is further charged, and the pertinent document supports the charge, that Roger acting in his several capacities, namely through powers of attorney for his sister, Margaret, and for his mother and brother, as trustee for his sister, Mary, for himself as a stockholder and for the corporation as president, purported in all such capacities to waive purchase rights, thereby opening the way to the acquiring of the Schofield interest by The Dolese Company.

Plaintiffs claim that neither Margaret nor Mary had knowledge of, or were consulted about or agreed to such a waiver prior to its execution, that the powers of attorney granted to Roger did not include the power to waive on behalf of Margaret, David and Jane, their right to purchase the Schofield stock, that Roger concealed the fact that Dolese Bros. Co. had sufficient cash and credit to make such a purchase and that said waiver was particularly a fraud on the plaintiff, Mary, her trust having sufficient funds for such a purchase for her benefit.

On the following day, at a special meeting of stockholders allegedly held without notice and attended solely by Roger in his various capacities and by The Dolese Company by its proxy, George Howard, although it was not then a stockholder, the actual acquisition of the Schofield stock was approved through the device of a partial liquidation of the corporation to the extent of 40% of its physical assets and properties and net current assets and a corresponding reduction of its capital and the retirement of 40% of its stock. The mother, Jane, David and Margaret then were presented and signed a ratification of such action. This so-called spin-off was consummated so as ultimately to cause The Dolese Company to become the owner of the Dolese transit-mix cement business and is attacked per se on the grounds of

unfairness both as to valuation as well as method of financing and for the further reason that it placed Roger in absolute control of the family business.

It is then charged that Roger fraudulently explained away the transaction, claiming it to be designed to eliminate the threat to the business posed by the Schofields and further that The Dolese Company had been organized for tax purposes in the course of consummating at great personal sacrifice a transaction which was essentially for the family's benefit. It is further alleged that the so-called ratification signed by Margaret, her mother, and brother, David, on November 29, 1946 was executed by Margaret without knowledge that "* * * $891,555.53 in assets of Dolese Bros. Co. at book value was distributed to Roger, Inc. (The Dolese Company) to pay the $870,000 price of the Schofield stock and that Roger, Inc. had retained the difference, and that the transit-mix concrete assets had been segregated and transferred to Roger, Inc. and that Dolese Bros. could no longer engage in this lucrative business."

Lack of understanding of what are alleged to be Roger's actual and fraudulent purposes is claimed to have continued until August, 1955 when Roger offered to purchase his mother's, sisters' and brothers' stock interests. Whereupon, as a result of inquiries by Mary and Margaret and their counsel concerning financial data furnished by Roger, it became apparent, according to the complaint, that Roger "* * * while purporting to act as a fiduciary for these Plaintiffs and for Jane, his mother, and David, his brother, and representing that he was protecting their interests, had wrongfully and fraudulently used his position as a fiduciary to divert the most profitable part of Dolese Bros.' business to his own benefit exclusively, in fraud of said corporation and its stockholders, and has kept the great gains and profits made from said business wrongfully and in fraud of Plaintiffs and the other stockholders of Dolese Bros."

Faced with these allegations, defendants earnestly contend that they are entitled to judgment of dismissal. I cannot agree.

While §220 of Title 8 Del.C. provides that the original or duplicate stock ledger shall be the only evidence as to who are the

stockholders entitled to vote at a meeting, and while a proxy holder, attorney in fact, or trustee may under proper circumstances act for a stockholder at a meeting of stockholders, I cannot accept defendants' contention that a unanimous vote of stockholders as recorded here bars a derivative action in which fraud in obtaining votes as well as other breaches of fiduciary duty allegedly committed in the course of consummating the transaction complained of are charged against the corporate officer against whom relief is sought. To require plaintiffs to bring preliminary suits to set aside the actual stockholder vote would, in my opinion, involve a wasteful circuity of action in view of the allegations set forth in the complaint, which while verbose and often lacking in precision, obviously proceed on the theory that plaintiffs did not consent to Roger's action with a full understanding of what he was actually doing. If these allegations can be sustained, there was not in a true sense a unanimous consent of the stockholders to Roger's plan.

Turning to the sufficiency of the complaint, I am satisfied that the fraud alleged is sufficiently indicative of plaintiffs' line of attack to withstand a motion to dismiss and that for defendants effectively to rely on ratification in the case of Margaret they must meet the burden of showing full knowledge, *Cahall v. Lofland,* 12 *Del.Ch.* 299, 114 *A.* 224, affirmed 13 *Del.Ch.* 384, 118 *A.* 1. This burden has not been carried on the present record particularly in the light of the allegations concerning Roger's dominant role in family affairs, allegations which tend to accentuate his duties as a corporate fiduciary.

Applying similar principles to the claims concerning the proxy given by Margaret to Roger for the November 27 stockholders' meeting, I conclude that defendants in order to sustain the theory of their defense again must show that her approval was given with knowledge of the material facts bearing on the fairness of the transaction for which her shares were voted, 3 Fletcher, *Cyc. Corporations* (Perm. Ed.) § 982, p. 466.

As to Mary, I am satisfied that she as the equitable owner of stock is qualified to bring a derivative action, *Rosenthal v. Burry Biscuit Corp.,* 30 *Del.Ch.* 299, 60 *A.2d* 106. In fact, stock held in a

margin account under the terms of which a broker has the right to sell or repledge stock held for the stockholder entitles its equitable owner to maintain a derivative action, *Saks v. Gamble* (Gamble-Skogmo Inc.), 35 *Del.Ch.* 378, 118 *A.2d* 793, affirmed *Del.Ch.* 122 *A.2d* 120. Furthermore, the rule that an equitable owner of stock may sue derivatively has also been recognized in so-called trust cases. See *Felsenheld v. Bloch Bros. Tobacco Co.,* 119 *W.Va.* 167, 192 *S.E.* 545, 123 *A.L.R.* 334, a case which involved inter alia an attack by stockholders suing derivatively for the recovery of salaries paid to the president of the corporation for the years 1924 and 1931. Such salary payments had been formally approved by the stockholders including the trustees of stock in which plaintiffs had an equitable interest. The Court took the view at least as to salaries for the years 1924-1931 that the action of the stockholders being regular and proper, no cause of action was assertable derivatively for the corporation, the Court concluding in view of such stockholder approval that whether or not a cestui que trust had a right of action against the trustees for allegedly improperly voting trust stock in support of the successive resolutions fixing the president's salary was a matter to be decided in an action against such trustees and not in a derivative action. I decline to apply the rationale of such decision here (it being stressed by defendants that Roger has not appeared as a trustee) in a situation where he as an officer-director is charged with fraudulent self-aggrandizement at the expense of his corporation.

While I recognize that a trustee is ordinarily the proper person to maintain a suit in equity for the benefit of the cestui que trust, nonetheless, a trust beneficiary may sue if the trustee refuses to sue. Furthermore, a trustee, while ordinarily joined as a defendant in such an action, need not be if he is not subject to the jurisdiction of the Court, 3 *Scott on Trusts* § 282 *et seq.* Here I can see no logical reason why Roger may not be effectively sued by the equitable owner of Dolese Bros. Co. shares for fraud allegedly committed by him as a corporate fiduciary inasmuch as appropriate relief may be granted, if justified, despite his failure to appear as the holder, as trustee, of legal title to stock of the corporation which it is claimed he has injured by placing self-interest before duty. Finally, there is no doubt in my

mind but that Margaret's power of attorney to Roger constituted him an agent and not a trustee, and that she at all relevant times was the actual owner of shares of Dolese Bros. Co. But if I am wrong in this, she may in any event for the reasons already given sue as the equitable owner of such shares.

Defendants having been charged with fraudulent concealment of the essential facts upon which plaintiffs propose to rely in order to establish their cause of action in a situation in which the principal actor, Roger, owed a heavy fiduciary duty to both of his sisters, statute of limitations or laches should not at this juncture be applied to bar recovery as Roger may in fact have been guilty of fraudulent breaches of trust resulting in his self-enrichment at the expense of the corporation, *Bovay v. H. M. Byllesby & Co.*, 27 *Del.Ch.* 381, 38 *A.2d* 808, 174 *A.L.R.* 1201, and *Wright v. Scotton*, 13 *Del.Ch.* 402, 406, 121 *A.* 69, 31 *A.L.R.* 1162. In the light of the allegations of the complaint, statute of limitations (if applicable to a case which appears to be essentially one of claimed diversion of corporate assets) as well as laches should be affirmatively pleaded, Rule 8(c), and established at trial.

In so deciding I reject defendant's contentions that knowledge of the wrongs complained of were imputable to the corporation at the time they are alleged to have been committed, and accordingly there has been no tolling of the statute of limitations. I do so because, according to the complaint, Jane Weber Dolese, the mother, who was the only strictly noninterested board member, was no more than an innocent bystander during the consummation of the matters complained of. Compare *Elster v. American Airlines, Inc.*, ante p. 195, 148 *A.2d* 343.

In support of their motion to dismiss, defendants, as noted above, have filed an affidavit to which are attached the minutes of a meeting of stockholders of Dolese Bros. Co. held on November 27, 1946, this being the meeting held, according to the minutes, pursuant to written call and written waiver, at which the partial liquidation of Dolese Bros. Co. to the extent of 40% of its assets was duly approved. In submitting such affidavit defendants evidently seek to complete the picture of

stockholder consent and ratification, the formal ratification attached to the complaint having recited that Margaret had read the November 27 minutes. Plaintiffs contend that in the light of such affidavit defendants' motion must be treated as one for summary judgment under the provisions of Rule 12(b). It must be noted, however, that the complaint is unverified, and no attempt was made by plaintiffs to amplify the record following the filing of defendants' affidavit. Compare *Sparks Co. v. Huber Baking Co.,* 9 *Terry* 9, 48 *Del.* 9, 96 *A.2d* 456.

While I see no reason for excluding defendants' affidavit and the attached minutes, which, as noted, are not denied, I do not think that the minutes as such entitle defendants to judgment as a matter of law. I say this because as I have stressed throughout this opinion, plaintiffs' case, if they can establish it at trial, is that they were the victims of overreaching on Roger's part (a theory which is not negatived by their depositions) and that they did not truly consent to or ratify Roger's action. In view of such line of attack the acceptance of the minutes as genuine does not blunt plaintiffs' case any more than does the fact of Margaret's certification that she had read the November 27 minutes. Rather, defendants must, if they can, controvert plaintiffs' allegations of fraud if they are to succeed. They are not now entitled to judgment as a matter of law even though the minutiae of a complicated corporate transaction for the most part conform meticulously to technical requirements because plaintiffs have adequately pleaded fraud in the very consummation of such transaction.

Subject to the reservation above noted as to the infant plaintiffs, defendants' motion treated under the provisions of Rule 12(b) as one for summary judgment is denied.

Order on notice.